UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT
--------------------------------------------------------X
LANTERN MARITIME COMPANY,

                              Plaintiff,                  Case No.:

      -against-                         **VERIFIED COMPLAINT**

PT BERLIAN LAJU TANKER TBK and GOLD
BRIDGE SHIPPING CORP.,

                             Defendants.
--------------------------------------------------------X

Plaintiff Lantern Maritime Company ("Lantern"), by its attorneys Robinson & Cole LLP and Reitler Kailas & Rosenblatt LLC, for its Complaint against defendants PT Berlian Laju Tanker Tbk ("BLT") and Gold Bridge Shipping Corporation (Gold Bridge"), avers as follows:

      1.      This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 U.S.C. § 1333. Plaintiff Lantern brings this action to recover hire, insurance and other charges due under a bareboat charter party it entered into with a BLT affiliate, Universal Grace Limited ("Universal Grace") on November 16, 2010 (the "Charter") for the chemical tanker WILUTAMA (the "Vessel").

      2.      Pursuant to a Guarantee and Indemnity Agreement (the "Guarantee") dated November 16, 2010, BLT and Gold Bridge guaranteed the due and prompt performance of all of the obligations of Universal Grace under the Charter and certain related agreements including an assignment of insurances and an assignment of vessel earnings. Universal Grace has defaulted on various obligations under the Charter and

133950

despite proper demand by Lantern under the Guarantee, BLT and Gold Bridge have refused to honor their obligations under the Guarantee.

3. At all times material to this action, Plaintiff Lantern was, and still is, a foreign company duly organized and operating under the laws of the Marshall Islands, and with a principal place of business at Trust Company Complex on Ajeltake Island of the Marshall Islands.

4. Upon information and belief, Defendant BLT is a foreign corporation or other business entity organized and existing pursuant to the laws of Indonesia, with an office and principal place of business at Wisma BSG 10th Floor, in Jakarta Indonesia.

5. Upon information and belief, Defendant Gold Bridge is a foreign corporation or other business entity organized and existing pursuant to the laws of Indonesia, with an office and principal place of business in the same office as BLT in Jakarta, Indonesia.

6. Lantern previously commenced an action in this Court against the Defendants on February 9, 2012. In that action Lantern sought an attachment of assets and funds of BLT and Gold Bridge that were being held by garnishees BLT Chembulk Group and Deutsche Bank.

7. On March 7, 2012 the Court issued the Order of Attachment against the named garnishees.

8. Based upon a settlement reached by the parties, Lantern, on March 8, 2012, discontinued the prior action without prejudice.

9. However, after Lantern discontinued the prior action, BLT's representatives including, Kevin Wong, the CFO of BLT, and Cosimo Borrelli, the chief

restructuring officer appointed by BLT, refused to proceed in good faith to finalize the settlement with Lantern. Indeed, Lantern believes that from the inception, BLT representatives misled Lantern regarding BLT's intention to settle this matter.

10. BLT's about face in finalizing the settlement has led to the re-filing of this action seeking the attachment of BLT and Gold Bridge funds and assets within the jurisdiction of this Court.

11. On March 14, 2012, thirteen (13) affiliates of BLT filed Chapter 15 bankruptcy proceedings in the United States District Court for the Southern District of New York. None of the BLT defendants and garnishees in this action is among the entities that filed for bankruptcy on March 14.

**Facts Pertinent to Lantern's Claims against BLT and Gold Bridge**

12. This case arises out of the Charter and the Guarantee, both dated November 16, 2010. A copy of the Charter is attached to this Complaint as <u>Exhibit A</u> and a copy of the Guarantee is attached as <u>Exhibit B</u>.

13. The Charter and the Guarantee were part of a larger transaction whereby Lantern purchased the Vessel from Universal Grace under a Memorandum of Agreement (the "MOA") dated November 16, 2010. Simultaneous to entering into the MOA, and in order to be able to finance the purchase of the Vessel, Lantern chartered the Vessel to Universal Grace for a period of five years.

14. Lantern was able to finance the purchase of the Vessel based upon (a) the reliable stream of income represented by the monthly charter hire to be paid by Universal Grace, and (b) the Guarantee by BLT and Gold Bridge of all obligations assumed by Universal Grace under the terms of the Charter.

15. To provide further financial security to Lantern, Universal Grace also agreed to: (a) an assignment of earnings from the employment of the Vessel, an obligation that was also specifically guaranteed by BLT and Gold Bridge under the terms of the Guarantee, and (b) a "put" option on the Vessel exercisable by Lantern at the end of the 5 year term of the Charter.

16. To further secure performance of the Charter, and as evidence of BLT's direct involvement in the Charter, Universal Grace agreed that BLT would maintain certain "financial covenants" including specific ratios of net debt to shareholder equity, EBITDA to debt service, and minimum cash or cash equivalents equal to or greater than the higher of US$50Million and four percent of interest bearing debt. (Cl. 35.4(a) of Rider Clauses to Charter, Exhibit A).

17. Under the terms of the Charter, Universal Grace chartered the Vessel from Lantern for a period of 60 months (Cl. 21 of Exhibit A) at a daily hire rate of US $18,900/day plus any supplemental hire payments due under the provisions of the Charter (Cl. 22).

18. Universal Grace was obligated to pay the hire due Lantern "punctually in accordance with the terms of this Charter in respect of which time shall be of the essence." (Cl. 11(a) of Part II of the Charter) That same clause required that "Basic Hire" and all "Supplemental Hire" be paid in advance on each "Payment Date".

19. The definitions set forth in Schedule 3 annexed to the Charter define "Payment Date" as "the Charter Period Commencement Date and thereafter the first day of each month of each year occurring during the Charter Period".

4

20. The Guarantee is governed by English law and the parties agreed to the non-exclusive jurisdiction of the courts of England and Wales for the resolution of any disputes. (Cls. 8.1 and 8.2 of the Guarantee, <u>Exhibit B</u>)

21. The Guarantee further provides that the submission to jurisdiction in England "shall not limit the right of the Owner [Lantern] to take proceedings against each Guarantor in any other court of competent jurisdiction nor shall the taking of proceedings in any one or more jurisdictions preclude the taking of proceedings in any other jurisdiction, whether concurrently or not." (Cl. 8.2 of <u>Exhibit B</u>)

22. The Guarantee further provides that each Guarantor waives any objection "to the laying of venue of any legal action or proceeding arising out of or in connection with this Guarantee in any court and any claim it may now or hereafter have that any such legal action or proceeding has been brought in an inconvenient forum." (Cl. 8.4 of <u>Exhibit B</u>)

### Universal Grace's, BLT's and Gold Bridge's Breach of their Obligations under the Charter and the Guarantee

23. Universal Grace failed to make the Charter Hire payment in the amount of US $585,900 due on January 3, 2012 and the Supplemental Hire payment in the amount of US $248.49 due on January 6, 2012.

24. On January 6, 2012 Lantern sent a Notice of Default to Universal Grace Clause with respect to the January payments that were due. A copy of that Notice is attached hereto as <u>Exhibit C</u>.

25. In the January Notice of Default, <u>Exhibit C</u>, Lantern also reserved its rights and remedies under Clauses 28 (Termination of the Charter in the Event of Default) and 29 (Rights and Remedies Available after Termination) of the Charter.

26. Universal Grace failed to make the Charter Hire payment in the amount of $548,100 due on February 1, 2012. Universal Grace also failed to make the February Supplemental Hire payment in the amount of US $2,717.31 and certain insurance payments due in the sum of $12,873.93.

27. On February 6, 2012 Lantern sent a Notice of Default to Universal Grace and to BLT and Gold Bridge, the guarantors under the Guarantee. A copy of that Notice is attached hereto as <u>Exhibit D</u>.

28. The February Notice of Default, <u>Exhibit D</u>, also noted that unless Lantern received payment of the February installment of the Basic Hire by February 9, 2012, Lantern would exercise its right to withdraw the Vessel and terminate the Charter pursuant to Clause 28(a) of the Charter.

29. Pursuant to Clause 29 of the Charter, Lantern is entitled to collect the Stipulated Loss Value set forth on Schedule 2 annexed to the Charter. The Stipulated Loss Values set forth in that Schedule are a form of liquidated damages that decrease on a pro rata bases as the Hire due under the Charter is paid.

30. Based upon the failure of Universal Grace and both Guarantors to make any of the payments that were due, Lantern terminated the Charter, retook possession of the WILUTAMA, and renamed the vessel CHEM RANGER. Lantern also requested that it be compensated for its future losses in accordance with the formula set forth in the Stipulated Loss Value provision.

31. The total amount due Lantern from BLT and Gold Bridge is presently $55,347,333.61.

**Request for Rule B Relief**

32. Lantern repeats and reavers the averments set forth in Paragraphs 1 through 31 of the Complaint as if fully set forth herein.

33. Lantern has given notice to the Defendants of the amounts that are presently due under the terms of the Guarantee.

34. The Defendants have ignored the foregoing Notice and have refused to make payment of the amounts that are due.

35. An article in the February 7, 2012 edition of maritime publication *TradeWinds* noted as follows: BLT has frozen payments tallying $418 [million] on bank loans, bonds and ship leases while it figures out how to tackle its finances." (Exhibit E attached hereto.)

36. Lantern has also learned that a leading shareholder of Defendant BLT has diverted $135 million in funds from BLT to another venture controlled by that shareholder.

37. As a result of the Defendants' breach of their obligations under the Guarantee, Lantern has suffered damages in the amount of **$55,347,333.61** as set forth below:

| Item | Amount |
|---|---:|
| Stipulated Loss Value (Month of Schedule to Charter) | $ 51,231,830.10 |
| January Basic Hire Due | $ 585,900.00 |
| February Basic Hire Due | $ 548,100.00 |
| March Basic Hire Due | $ 585,900.00 |
| Supplemental Hire Due | $ 11,062.96 |
| MII & IOI Insurances | $ 12,873.93 |
| Unwinding Costs | |
|    Loan Unwinding Costs | $ 866,666.62 |
|    DVB Unwinding of Fixed Interest | $ 1,185,000.00 |
|    Transaction Document Unwinding Costs | $ 20,000.00 |
|    Owners' Unwinding Costs (incl. Legal exps) | $ 300,000.00 |
| **GRAND TOTAL** | **$ 55,347,333.61** |

38. This action is brought in order to obtain security for Lantern's claims against the Defendants.

39. Defendants BLT and Gold Bridge cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions of the Federal Rules of Civil Procedure. <u>See</u> Affidavit of Leo G. Kailas sworn to March 15, 2012 ("Kailas Aff."), ¶¶ 2-3.

40. A BLT affiliate located within the District of Connecticut, BLT Chembulk Group ("BLT Chembulk") has been responsible for the commercial management of more than sixty chemical tankers that are owned through subsidiary companies by BLT and Gold Bridge. Attached as <u>Exhibit F</u> is a "Company Profile" of BLT Chembulk available on the Company's website confirming that it is the commercial manager for more than sixty BLT chemical tankers.

41. Based on information Lantern has obtained from marine charter brokers who have "fixed" -- negotiated voyage or time charter parties known in the industry as vessel fixtures -- vessels in the BLT fleet managed by BLT Chembulk, the charter parties provide for the payment of freight or hire earned by the BLT vessels and ultimately payable to BLT and Gold Bridge, into accounts set up and controlled by BLT Chembulk.

42. Based on recent discussions that Lantern principals have had with Kevin Wong and other representatives of BLT, Lantern believes that BLT Chembulk is holding and receiving funds that belong to BLT.

43. Based on this information Lantern believes that BLT Chembulk is presently holding monies that are owed or payable to BLT and to Gold Bridge.

44. In addition, Lantern believes that Deutsche Bank which has a branch located at One Pickwick Plaza, Greenwich, Connecticut 06830 is also holding funds that belong to BLT and Gold Bridge.

45. Plaintiff Lantern seeks an order from this Court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions attaching any assets of defendants BLT and Gold Bridge which are held by BLT Chembulk and by Deutsche Bank for the purpose of obtaining personal jurisdiction over defendants BLT and Gold Bridge, and to secure plaintiff Lantern's claim as described above.

WHEREFORE, plaintiff Lantern respectfully requests the following:

a) That process in due form of law issue against defendants BLT and Gold Bridge, citing them to appear and answer under oath all and singular the matters alleged in the Complaint;

b) That since defendants BLT and Gold Bridge cannot be found within this District pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, this Court issue an Order directing the Clerk of the Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, attaching all tangible or intangible property in whatever form or any other funds held by any garnishee, including, but not limited to, BLT Chembulk and Deutsche Bank, in the amount of

$55,347,333.61, plus interest and additional costs, to secure plaintiff Lantern's claims, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

c) That this Court retain jurisdiction over this matter through the entry of any judgment or award associated with any of the claims currently pending, or which may be initiated in the future, including any appeals thereof;

d) That this Court award Plaintiff Lantern the attorneys' fees and costs it has incurred in this action; and

e) That the plaintiff Lantern has such other, further and different relief as the Court deems just and proper.

Dated: New York, New York
       March 15, 2012

                                    PLAINTIFF,
                                    LANTERN MARITIME COMPANY

                                    By: _____
                                        Gregory J. Ligelis (CT-04378)
                                        1055 Washington Blvd.
                                        Stamford, CT
                                        Tel: 203.462.7516
                                        Fax: 203.462.7599
                                        Email: gligelis@rc.com

Of Counsel:
Leo G. Kailas
Reitler Kailas & Rosenblatt LLC
885 Third Avenue
The Lipstick Building
New York, NY 10022
Tel: 212.209.3050
Email: lkailas@reitlerlaw.com

## VERIFICATION

STATE OF NEW YORK   )
                    ) ss.:
COUNTY OF NEW YORK  )

LEO G. KAILAS, being duly sworn, deposes and say:

I am an attorney at law duly admitted to practice before the Federal Courts of the Southern and Eastern Districts of New York and I am a member of the firm of Reitler Kailas & Rosenblatt LLC, co-counsel with Robinson & Cole LLP as attorneys for plaintiff Lantern Maritime Company ("Lantern"). I have read the foregoing Verified Complaint and the contents thereof; the same is true to the best of my knowledge, except as to the matters therein stated to be alleged upon information and belief, and as to those matters I believe them to be true. The basis of my knowledge and belief as to all matters are investigations which I have made of documents produced to me by Lantern, communications with agents of Lantern and materials found on the BLT Chembulk Group website.

This verification is made by me and not by Lantern because Lantern is a foreign company which is not located in the county where I have my office.

_____
LEO G. KAILAS

Sworn to before me this
15th day of March, 2012

_____
Notary Public

Lauren K. Kluger
Notary Public, State of New York
No. 02KL5045624
Qualified in New York County
Commission Expires June 26, 2015