UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

-----------------------------------------------------------X
LANTERN MARITIME COMPANY,

                      Plaintiff,                Case No.: 3:12-cv-00398-AVC

   -against-

PT BERLIAN LAJU TANKER TBK and GOLD
BRIDGE SHIPPING CORP.,

                      Defendants.
-----------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S
MOTION TO ENFORCE SETTLEMENT AGREEMENT AND EXTEND
THE TIME BY WHICH FINAL SETTLEMENT PAPERS ARE TO BE FILED**

### MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF'S MOTION TO ENFORCE SETTLEMENT AGREEMENT AND EXTEND THE TIME BY WHICH FINAL SETTLEMENT PAPERS ARE TO BE FILED

Plaintiff Lantern Maritime Company ("Lantern") respectfully submits this Memorandum of Law in support of its Motion to enforce a settlement reached by the parties on May 31, 2012 and to extend the time by which the parties are to file final settlement papers. On June 7, 2012, this Court ordered the parties to file final settlement papers by October 5, 2012. Because defendants are not complying with their obligations under the settlement agreement reached between the parties, the parties are not in a position to file final settlement papers at this time. Accordingly, this Court should extend the time by which the parties have to file their final settlement papers until after such time as the remaining disputes between the parties are resolved.

### PRELIMINARY STATEMENT OF FACTS

This case arises out a bareboat charter party dated November 16, 2010 (the "Charter Party"), pursuant to which Lantern chartered the chemical tanker WILUTAMA (currently the CHEM RANGER) for a period of five years to Universal Grace Limited ("Universal Grace"), an affiliate of defendants PT Berlian Laju Tanker Tbk ("BLT") and Gold Bridge Shipping Corp. ("Gold Bridge"). The Charter Party was part of a larger transaction whereby Lantern purchased the WILUTAMA from Universal Grace. As part of that transaction, BLT and Gold Bridge entered into a Guarantee and Indemnity Agreement (the "Guarantee"), pursuant to which Defendants agreed to guarantee the due and prompt performance of all of Universal Grace's obligations under the Charter Party.

Defendant BLT is an Indonesian entity engaged in the worldwide shipment of liquid bulk cargoes, such as crude oil, liquefied petroleum, petrochemical gas substances and vegetable oil. Defendant Gold Bridge is a foreign affiliate of BLT.

Lantern commenced this action on March 15, 2012, by filing a Complaint and Application for Writ of Garnishment. See ECF Docket Nos. 1-6. Lantern invoked this Court's maritime jurisdiction and sought damages in excess of $55 million pursuant to the Guarantee. A substantial portion of those damages consisted of payment of the Stipulated Loss Value ("SLV") of the Vessel (see Declaration of Brian Ladin, dated October 2, 2012 ("Ladin Decl."), Ex. B, p. 49, Schedule 2). The SLV calculation is a present value calculation agreed to by Lantern and Universal Grace up front which represented the "Net Present Value" ("NPV", or the present value of a set of discounted cash flows whose sum equals an agreed upon return on equity capital) of the lease payment stream, including the vessel "put" at the end of the lease, at any given point in time. In other words, the clear intent and purpose of the economic provisions of the Charter Party was that Lantern would not have any economic or market risk with respect to the Vessel, and, in particular, no residual risk with respect to the value of the Vessel, since Lantern had the ability to "put" or sell the vessel back to Universal Grace at a set price at the end of the five year lease. See Ex. B, Clause 37.

On May 15, 2012, the parties appeared before this Court for oral argument on Lantern's Order to Show Cause in connection with its Application for Writ of Garnishment. This Court granted Lantern's Application by Order entered on May 17, 2012. See ECF Docket Nos. 51, 52.

On May 17, 2012, Lantern commenced another maritime action against BLT and Gold Bridge in the United States District Court for the Southern District of Texas, seeking to enforce its rights under the Guarantee. Simultaneously with the commencement of that lawsuit, Lantern

sought and obtained an *ex parte* Writ of Attachment and Garnishment of the vessel M/T PARTAWATI, which was, at that time, present within the Southern District of Texas. A copy of the Writ of Attachment and Garnishment is attached hereto as Exhibit A. That vessel was seized by the U.S. Marshall on May 17, 2012.

Shortly thereafter, the parties entered into settlement discussions, which culminated in the execution of a confidential Term Sheet and Settlement Agreement dated May 21, 2012 (the "Settlement Agreement"). See Ladin Decl., Ex. A. Pursuant to the Settlement Agreement, Lantern agreed to arrange for the release the M/T PARTAWATI. A copy of the Release of Seizure pursuant to which the M/T PARTAWATI was released is attached hereto as Exhibit B. The action Lantern brought in the United States District Court for the Southern District of Texas was subsequently dismissed by Order entered July 9, 2012. A copy of the Order dismissing that action is attached hereto as Exhibit C.

On May 22, 2012, counsel for the Defendants wrote to this Court, advising the Court of the settlement and that, pursuant to the Settlement Agreement, the parties agreed that this Court would retain jurisdiction to enforce the Settlement Agreement and that this action would be suspended until Lantern received a certain quantum to be paid in installments. In that letter, Defendants advised this Court that the parties anticipated that the required payments would be made by October 1, 2012. A copy of Defendants' counsel's letter is attached hereto as Exhibit D.

On June 7, 2012, this Court directed that the parties file their final settlement papers on or before October 5, 2012. See ECF Docket No. 54.

As part of the Settlement Agreement, BLT agreed to make certain payments to Lantern to compensate Lantern for outstanding bareboat charter hire and legal expenses to a maximum of

$2,000,000. See Ladin Decl., Ex. A, p. 4, ¶ 2. BLT also agreed that Lantern's additional damages claims under the Charter Party, including the put option thereunder, would be dealt with "on a good faith basis in any restructuring/scheme of arrangement which will be launched by BLT no later than 30 September 2012." See id., p. 4, ¶ 3. It is important to point out that it was the contemplation of the parties that the "restructuring" referenced in this paragraph would take place under the law of Singapore, and that Lantern would be treated fairly in this process. Ladin Decl., ¶ 18. Finally, as part of the Settlement Agreement, BLT agreed to use its "reasonable endeavors" to agree to a "substantially similar settlement structure" for another vessel, the M/T CHEM BULLDOG (formerly the PITALOKA). Ladin Decl., Ex. A, p. 5, ¶ 9. The CHEM BULLDOG had been chartered by another BLT affiliate, Diamond Flow Ltd ("Diamond Flow"), from a company called Pharos Maritime Company ("Pharos"). Both Pharos and Lantern are partially owned by an entity called Delos Shipping LLC ("Delos"). Diamond Flow's obligations under its charter of the PITALOKA were, like the WILUTAMA Charter, guaranteed by BLT and Gold Bridge, and the charter parties for the two vessels were largely identical. Like Universal Grace, Diamond Flow failed to perform its obligations to Pharos, and BLT and Gold Bridge failed to perform on its guaranty obligations relating to the PITALOKA.

Because of the similar terms of the relevant agreements, the similar circumstances resulting in the breach of those agreements, and the related ownership structures of the parties involved in the two transactions, the parties to the Settlement Agreement decided that it was in the best interest of all concerned that the PITALOKA matter be settled on "substantially similar" terms as the WILUTAMA matter. Ladin Decl., Ex. A, p. 5.

In violation of its obligations under the Settlement Agreement BLT has refused to engage in good faith negotiations with respect to the damages sustained by Lantern (with respect to the

CHEM RANGER) and Pharos (with respect to the CHEM BULLDOG). Instead, BLT has taken the position that these claims must be resolved in the context of involuntary restructuring proceedings, called PKPU proceedings, that were commenced in Indonesia <u>after</u> the execution of the Settlement Agreement. Instead of proceeding with the informal restructuring under Singapore law contemplated by the Settlement Agreement, or attempting to reach a good faith resolution of the outstanding claims, BLT has demanded that Lantern acquiesce in an Indonesian process, in which Lantern's interests will not be adequately protected, and in which BLT has endeavored to strong-arm and isolate Lantern. <u>See</u> <u>generally</u>, Ladin Decl., ¶¶ 27-40.

Lantern, therefore, brings this motion for an Order to compel BLT to enter into these agreements, in accordance with its obligations under the Settlement Agreement, and to extend the time by which the parties have to file their final settlement papers.

## ARGUMENT

Agreements settling litigation are solemn undertakings, invoking a duty upon the involved lawyers, as officers of the court, to make every reasonable effort to see that the agreed terms are fully and timely carried out. <u>The Aro Corp. v. Allied Witan Co.</u>, 531 F.2d 1368, 1372 (6th Cir.), <u>cert. denied</u>, 429 U.S. 862 (1976). Settlement agreements enjoy great favor with the courts and as a matter of public policy as a preferred alternative to costly, time-consuming litigation and will be enforced whenever possible. <u>Fidelity and Guar. Ins. Co. v. Star Equip. Co.</u>, 541 F.3d 1, 5 (1st Cir. 2008); <u>McCall-Bey v. Franzen</u>, 777 F.2d 1178, 1195 (7th Cir. 1985). Where, as here, the parties enter into a settlement agreement during the course of litigation, the court retains jurisdiction to enforce the agreement as long as the action is pending. <u>T Street Development, LLC v. Dereje and Dereje</u>, 586 F.3d 6, 10-11 (D.C. Cir. 2009). In addition, in this case, the parties specifically agreed that this Court would retain jurisdiction to enforce the terms

of the Settlement Agreement. Ladin Decl., Ex. A, p. 4, ¶ 7. A district court has the power to enforce summarily, on motion, a settlement agreement reached in a case pending before it. Northern Maine Transp. LLC v. OneBeacon Amer. Ins. Co., 820 F. Supp. 2d 139, 145 (D. Maine 2011); Collick v. United States, 552 F. Supp. 2d 349, 352 (E.D.N.Y. 2008); Garibaldi v. Anixter, Inc., 533 F. Supp. 2d 308, 310 (W.D.N.Y. 2008); DiMartino v. City of Hartford, 636 F. Supp. 1241, 1244 (D. Conn. 1986).

An agreement to settle a legal dispute is a contract and its enforceability is governed by familiar principles of contract law in accordance with local law. Jeff D. v. Andrus, 899 F.2d 753, 759 (9th Cir. 1990). In this case, BLT agreed to resolve Lantern's claim for monetary damages, including damages arising out of its put option, "on a good faith basis in any restructuring/scheme of arrangement which will be launched by BLT no later than 30 September 2012." See Ladin Decl., Ex. A, p. 4, ¶ 3. Instead of launching a restructuring process under Singapore law, as contemplated by the parties, or engaging in good faith negotiations with Lantern, BLT has insisted that Lantern acquiesce in the Indonesian PKPU process, which was commenced by BLT's creditors after the Settlement Agreement was executed. BLT also breached its unambiguous obligation to use its "reasonable endeavors" to agree to a "substantially similar settlement structure" for the CHEM BULLDOG. Id., Ex. A, p. 5, p. 9.

BLT may argue that the provisions of the Settlement Agreement requiring it to negotiate in good faith and to use its reasonable endeavors to enter into an agreement regarding the CHEM BULLDOG on "substantially similar" terms to those contained in the Settlement Agreement with respect to the CHEM RANGER are unenforceable. In Miller Automobile Corp. v. Jaguar Land Rover N. Amer., L.L.C., 812 F. Supp.2d 133 (D. Conn. 2011), aff'd on other grounds, 471 Fed. Appx. 37 (2d Cir. 2012) and Kopperl v. Bain, 2010 WL 3490980 (D. Conn., Aug. 30, 2010), two

judges in this District concluded, without citing any state law authority, that Connecticut law would not enforce a preliminary contractual provision requiring parties to negotiate in good faith towards a definitive agreement.  In reaching this conclusion, the Courts rejected an extensive line of authority in the Second Circuit which, applying New York law, held that such contracts are, in fact, enforceable.  See, e.g., Vacold LLC v. Cerami, 545 F.3d 114 (2d Cir. 2008).  Lantern respectfully submits that this Court enforce the provisions of the Settlement Agreement, notwithstanding these two decisions.  Not only would any other result undermine the strong public policy supporting enforcement of agreements settling lawsuits, the parties to the Settlement Agreement specifically provided that disputes relating to the new charter party be submitted to arbitration in New York pursuant to United States law, indicating an intent to be bound by New York, not Connecticut, law.  Ladin Decl., Ex. A, p. 3, ¶ 11.

Not surprisingly, Lantern never would have agreed to subject its claims to resolution in an Indonesian legal proceeding.  United States courts have previously found that the administration of justice in Indonesia is highly susceptible to corruption benefiting local business conglomerates.  See, e.g., In re Perry H. Koplik & Sons, Inc. v. Mandiri, 357 B.R. 231, 239-242 (Bankr. S.D.N.Y. 2006); Gryphon Domestic VI, LLC v. APP Int'l Fin. Co., 41 A.D.3d 25, 36-38 (1st Dep't 2007).  See also 2010 Human Rights Report:  Indonesia (U.S. Dep't of State), pp. 11-12 (annexed hereto as Exhibit E) ("Widespread corruption throughout the legal system continues.").

The purpose of the Settlement Agreement was to globally resolve all disputes between the parties.  BLT clearly had a compelling reason to enter into a comprehensive settlement, because it wanted the M/T PARTAWATI released from seizure.  Having benefited from Lantern's performance under the Settlement Agreement, BLT should not be allowed to evade its

contractual obligations, or hide behind the PKPU process. The PKPU process does not prevent BLT from engaging in good faith negotiations with Lantern. Ladin Decl., ¶ 32. Moreover, because there is no conflict between the requirements of the Settlement Agreement and the requirements of Indonesian law, principles of comity do not in any way interfere with this Court's power to enforce the Settlement Agreement. <u>Container Leasing Int'l, LLC v. Navicon, S.A.</u>, 2006 WL 861012 at *6 (D. Conn., March 31, 2006).

## CONCLUSION

For the foregoing reasons, as well as those set forth in the accompanying Declarations of Edward P Grosz and Brian Ladin, both dated October 3, 2012, Lantern's Motion to Enforce Settlement Agreement and Extend the Time by Which Final Settlement Papers are to be Filed should be granted.

Dated: New York, New York
October 3, 2012

PLAINTIFF,
LANTERN MARITIME COMPANY

By: _____/s/ Edward P. Grosz_____
Leo G. Kailas (admitted *pro hac vice*)
Edward P. Grosz (admitted *pro hac vice*)
Reitler Kailas & Rosenblatt LLC
885 Third Avenue
20th Floor
New York, New York 10022
Tel. (212) 209-3050
Fax (212) 371-5500
Email: lkailas@reitlerlaw.com
Email: egrosz@reitlerlaw.com

and

Gregory J. Ligelis (CT-04378)
Robinson & Cole LLP
1055 Washington Blvd.
Stamford, CT 06901
Tel: 203.462.7516
Fax: 203.462.7599
Email: gligelis@rc.com